1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

LEIF A. H. WERNER,

                    Plaintiff,

8

v.

9

CITY OF POULSBO, et al.,

10

                    Defendants.

11

CASE NO. C11-5608BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

12

13

14

15

16

17

        This matter comes before the Court on Defendants City of Poulsbo and City of

Poulsbo Police Department ("the City") and Officer Darrell Moore's ("Moore")

(collectively, "Defendants") motion for summary judgment (Dkt. 19).  The Court has

considered the pleadings filed in support of and in opposition to the motion and the

remainder of the file and hereby grants in part and denies in part the motion for the

reasons stated herein.

18

**I. PROCEDURAL HISTORY**

19

20

21

        On August 11, 2011, Plaintiff Leif A. H. Werner ("Werner") filed a complaint

against Defendants alleging violations of 42 U.S.C. § 1983 and various state law claims.

Dkt. 7.

22

1    On August 7, 2011, Defendants filed a motion for summary judgment seeking

2  dismissal with prejudice of all of Werner's claims alleged against them.  Dkt. 19.  On

3  September 4, 2012, Werner responded (Dkt. 24) and on September 7, 2012, Defendants

4  replied (Dkt. 29).

5                        **II. FACTUAL BACKGROUND**

6    Solely for purposes of deciding the instant motion for summary judgment and

7  unless otherwise noted, the Court adopts the facts as alleged by Werner in his response to

8  the motion (Dkt. 24 at 2-6), as the Court must view disputed facts in the light most

9  favorable to the non-moving party.

10                          **III. DISCUSSION**

11  **A.    Summary Judgment Standard**

12    Summary judgment is proper only if the pleadings, the discovery and disclosure

13  materials on file, and any affidavits show that there is no genuine issue as to any material

14  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

15  The moving party is entitled to judgment as a matter of law when the nonmoving party

16  fails to make a sufficient showing on an essential element of a claim in the case on which

17  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

18  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

19  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

20  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

21  present specific, significant probative evidence, not simply "some metaphysical doubt").

22  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

1  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

2  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc*., 477

3  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

4  626, 630 (9th Cir. 1987).

5          The determination of the existence of a material fact is often a close question. The

6  Court must consider the substantive evidentiary burden that the nonmoving party must

7  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

8  U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630.  The Court must resolve any factual

9  issues of controversy in favor of the nonmoving party only when the facts specifically

10 attested by that party contradict facts specifically attested by the moving party.  The

11 nonmoving party may not merely state that it will discredit the moving party's evidence

12 at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

13 *Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

14 nonspecific statements in affidavits are not sufficient, and missing facts will not be

15 presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

16 **B.      Defendants' Motion for Summary Judgment**

17          In their motion for summary judgment, Defendants argue that Werner's claims

18 must be dismissed because Moore had probable cause to arrest Werner, the use of force

19 by Moore was reasonable, Werner is judicially estopped from arguing that he did not

20 resist arrest, Moore is entitled to qualified immunity, the City is not liable under *Monell*

21 *v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), and that Werner has failed to present

22 sufficient evidence to support his state law claims.  Dkt. 19.

1      **1.      Judicial Estoppel**

2          "[F]ederal law governs the application of judicial estoppel in federal court."

3  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).  Three

4  non-exhaustive factors that a trial court should generally consider when determining

5  whether to apply the doctrine of judicial estoppel are:

6          First, a party's later position must be clearly inconsistent with its earlier
           position.  Second, courts regularly inquire whether the party has succeeded
7          in persuading a court to accept that party's earlier position, so that judicial
           acceptance of an inconsistent position in a later proceeding would create the
8          perception that either the first or second court was misled.  Third, courts
           ask whether the party seeking to assert an inconsistent position would
9          derive an unfair advantage or impose an unfair detriment on the opposing
           party if not estopped.

10 *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).

11         Here, Defendants argue that Werner should be estopped from arguing in this

12 action that he did not resist arrest by Moore on August 21, 2008, because he signed a pre-

13 trial diversion agreement in his criminal case in Kitsap County, which states:

14         **Stipulation that there are Facts Sufficient to Prove the Charge**.  The
           Defendant agrees that there are facts sufficient to prove the charge of
15         Resisting Arrest beyond a reasonable doubt.  The Defendant makes this
           stipulation freely and voluntarily.  No one has threatened harm of any kind
16         to the Defendant or to any other person to cause the Defendant to make this
           stipulation.  No person has made promises of any kind to cause the
17         Defendant to enter this stipulation except as set forth in this contract.

18 Dkt. 26 at 57.  Werner maintains that judicial estoppel does not apply because Defendants

19 have failed to identify, in the pre-trial diversion agreement or otherwise, inconsistent

20 statements made by Werner that were adopted in the criminal action.  Dkt. 24.  In

21

22

1   addition, Werner argues that Defendants have failed to show how they would be

2   disadvantaged by any alleged prior inconsistent statement made by Werner.  *Id.*

3          The Court concludes that judicial estoppel applies to bar Werner from arguing in

4   the instant action that he did not resist arrest.  Werner's current position that he did not

5   resist arrest is clearly inconsistent with his position in the Kitsap County criminal case in

6   which he signed a pre-trial diversion agreement that states exactly the opposite, that he

7   agreed there were "facts sufficient to prove the charge of Resisting Arrest beyond a

8   reasonable doubt."  Dkt. 26 at 56.  In addition, in signing the agreement, Werner agreed

9   to the following waiver of rights:

10          The Defendant understands that he or she has the right to contest and object
            to evidence presented against the Defendant.  The Defendant gives up the
11          right to contest and object to any evidence presented against the Defendant
            as to the Defendant's guilt or innocence regarding the underlying charge(s)
12          at any future hearings if the Defendant fails to comply with the conditions
            in this Agreement.  The Defendant also understands that he or she has the
13          right to present evidence on the Defendant's own behalf.  The Defendant
            gives up the right to present evidence on the Defendant's own behalf as to
14          the Defendant's guilt or innocence regarding the underlying charge(s).  The
            Defendant understands that evidence will be presented against the
15          Defendant at a future hearing and the Defendant understands that the Judge
            will read and review that evidence in determining the Defendant's guilt or
16          innocence.

17   *Id.* at 55.  Accordingly, even if the conditions of the pre-trial diversion agreement had not

18   been met, Werner would not have had the opportunity to defend himself against the

19   Resisting Arrest charge, as stated above.  Thus, the Court is not persuaded by Werner's

20   argument that he never admitted that he resisted arrest but "rather merely accepted the

21   prosecutor's offer (made in his discretion) to postpone the prosecution until it was either

22   renewed or dismissed" (Dkt. 24 at 19).

Second, there is no question the state court accepted Werner's earlier position in that the court entered the agreement as a stipulation and order in the case and therefore "the judicial acceptance of an inconsistent position in [this] proceeding would create the perception that either the first or second court was misled." *New Hampshire*, 532 U.S. at 743.

Finally, the Court finds that Werner, in seeking to assert this inconsistent position, would derive an unfair advantage. Werner could have chosen to fight the Resisting Arrest charge and, if successful, would have been free to argue a consistent position here, namely, that he did not resist arrest, subject to the limitations of *Heck v. Humphrey*, 512 U.S. 477 (1994). However, Werner chose to take advantage of the pre-trial diversion agreement in which he agreed that there were facts sufficient to prove a charge of Resisting Arrest against them, and in return for signing the agreement and complying with its conditions, the case against him was eventually dismissed. It would be unfair for him to avoid the limitations of *Heck v. Humphrey* by allowing him to take one position in state court and proceed with an action here where he takes the very opposite position.

Accordingly, the Court concludes that judicial estoppel applies to prohibit Werner from arguing in this action that he did not resist arrest on August 21, 2008.

**2.      42 U.S.C. § 1983**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person

1    acting under color of state law and that (2) the conduct deprived a person of a right,

2    privilege, or immunity secured by the Constitution or by the laws of the United States.

3    *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v.*

4    *Williams*, 474 U.S. 327 (1986).

5              **a.    The Fourth Amendment**

6         The Fourth Amendment guarantees the right of the people to be secure in their

7    persons, houses, papers, and effects, against unreasonable searches and seizures.  U.S.

8    Constitution, Amend. VI.   Werner alleges a violation of his Fourth Amendment rights

9    based on an unlawful seizure due to lack of probable cause and use of excessive force.

10   Dkt. 1.

11        "Probable cause to arrest exists when officers have knowledge or reasonably

12   trustworthy information sufficient to lead a person of reasonable caution to believe that

13   an offense has been or is being committed by the person being arrested."  *United States v.*

14   *Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  "The probable-cause standard is incapable

15   of precise definition or quantification into percentages because it deals with probabilities

16   and depends on the totality of the circumstances."  *Maryland v. Pringle*, 540 U.S. 366,

17   371 (2003).

18        It is well established that Fourth Amendment excessive force claims are properly

19   analyzed under an "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S.

20   386, 394 (1989).  In other words, law enforcement officers making an arrest may use

21   only that amount of force that is objectively reasonable in light of the facts and

22

1    circumstances confronting the officer, without regard to the officer's underlying intent

2    or motivation. *Id.* at 397.

3         In analyzing an excessive force claim, the court must first examine the quantum

4    of force used against the individual. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir.

5    1994). Next, the court must assess the importance of the governmental interests

6    involved. *Id.* Finally, the court must "consider the dispositive question whether

7    the force that was applied was reasonably necessary under the circumstances."

8    *Miller v. Clark County*, 340 F.3d 959, 966 (9th Cir. 2003).

9                        **b.    Qualified Immunity**

10        Government officials who are sued in their individual capacities have qualified

11   immunity from suit absent evidence of incompetence or knowing violation of the law.

12   *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule is intended to "balance

13   two important interests – the need to hold public officials accountable when they exercise

14   power irresponsibly and the need to shield officials from harassment, distraction, and the

15   liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223,

16   231 (2009). Qualified immunity is not merely a defense to liability; it is an entitlement to

17   immunity from suit in the first place. *See Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th

18   Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

19        When analyzing a motion containing a qualified immunity defense, the court

20   considers (1) whether a violation of a constitutional right has been shown, and (2)

21   whether a reasonable official would have recognized that his actions violated a clearly

22

1   established law.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001*), overruled in*

2   *part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

3          Under *Pearson*, trial court judges have the discretion to decide "which of the two

4   prongs of the qualified immunity analysis should be addressed first in light of the

5   circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 818 ("The judges of

6   the district courts and the courts of appeals should be permitted to exercise their sound

7   discretion in deciding which of the two prongs of the qualified immunity analysis should

8   be addressed first in light of the circumstances in the particular case at hand").  A

9   plaintiff must be able to satisfy both prongs of the analysis, and absent a showing of a

10  constitutional violation, there is no need to consider the second prong of the qualified

11  immunity analysis.  *Id*.

12                    **c.      Moore's Qualified Immunity**

13         The Court concludes that Werner has presented sufficient evidence to show that

14  there are material questions of fact that preclude a finding that Moore is entitled to

15  qualified immunity.  Taking the facts in the light most favorable to Werner, the Court

16  concludes that Werner has shown a constitutional violation occurred if and when Werner

17  was returning to his vehicle, as instructed by Moore, and Moore proceeded to put a

18  chokehold on Werner and arrest him.  Although the Court has concluded that Werner is

19  barred from arguing that he did not resist arrest, the Court also concludes that there are

20  issues of material fact as to whether Moore violated his constitutional rights by using

21  excessive force, even assuming Werner later resisted arrest.  Accordingly, based on

22

1    Werner's version of the facts, the Court cannot conclude that there was no constitutional

2    violation or that any such violation was not clearly established.

3            **d.     The City's Liability Under § 1983**

4            A claim for municipal liability is commonly referred to as a *Monell* claim.  In

5    *Monell*, the Supreme Court held that a municipality can be held liable under § 1983 only

6    when the municipality itself causes the constitutional violation; respondeat superior

7    liability will not attach under § 1983 in municipality liability claims.  *Monell*, 436 U.S. at

8    694-95.  To impose liability under *Monell*, a plaintiff must show "a deliberate policy,

9    custom, or practice that was the 'moving force' behind the constitutional violation he

10   suffered."  *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (citing

11   *Monell*, 436 U.S. at 694-95).  There are three specific instances in which a municipality

12   may be liable for constitutional violations under *Monell*.  "First, a local government may

13   be held liable 'when implementation of its official policies or established customs inflicts

14   the constitutional injury.'"  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249

15   (9th Cir. 2012) (quoting *Monell*, 436 U.S. at 708).  Second, a plaintiff can prevail on a

16   *Monell* claim against the City Defendants by identifying acts of omission "when such

17   omissions amount to the local government's own official policy."  *Id*.  To impose liability

18   based on a municipality's omission by its failure to train, a plaintiff must show that "the

19   need for more or different training is so obvious, and the inadequacy so likely to result in

20   the violation of constitutional rights, that policymakers . . . can reasonably be said to have

21   been deliberately indifferent to the need."  *City of Canton v. Harris*, 489 U.S. 378, 380

22   (1989).  Finally, a municipality "may be held liable under § 1983 when 'the individual

1    who committed the constitutional tort was an official with final policy-making authority'

2    or such an official 'ratified a subordinate's unconstitutional decision or action and the

3    basis for it.'"  *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342,

4    1346-47 (9th Cir. 1992) (internal quotation marks and citations omitted)).

5         Here, the Court concludes that Werner has not made an adequate showing for any

6    liability by the City under *Monell*.  He has failed to present any evidence that any

7    omission by the City regarding training rose to the level of deliberate indifference or that

8    a deliberate policy, custom, or practice was the "moving force" behind any constitutional

9    violation that may have been suffered.

10        Therefore, the Court grants summary judgment in favor of Defendants on

11   Werner's § 1983 claims brought against the City.

12        **3.      Remaining State Law Claims**

13        The Court concludes that Defendants are entitled to summary judgment on

14   Werner's negligence claim brought against the City because Washington, with the

15   exception of situations not present here, does not recognize a claim for negligence based

16   on alleged negligent police investigations and Werner has failed to show that the City

17   owed him a duty, as is required to prove negligence.  *See Rodriguez v. Perez*, 99 Wn.

18   App. 439, 443 (2000).

19        With respect to Werner's remaining state law claims, the Court concludes that

20   there are genuine issues of material fact that prevent the Court from granting summary

21   judgment.

22

**C.      Motions to Strike**

The Court makes the following rulings on the parties' motions to strike (Dkts. 29 & 31):

(1) Defendants' motion to strike various medical and psychological treatment records submitted by Werner (Dkt. 26, Exh. 6) as irrelevant is denied because the Court concludes such records are relevant in proving Werner's state law claims, but will not consider any impermissible hearsay contained in such records.

(2) Defendants' motion to strike the citizen complaints submitted by Werner as impermissible character or propensity evidence is granted to the extent that the Court does not consider these materials permissible for that purpose or relevant concerning the claims against Moore, and regardless, would consider any relevance to be outweighed by the prejudicial nature of the complaints.  However, the Court does consider these complaints in analyzing the claims against the City.

(3) Defendants' motion to strike the LA Weekly newspaper article is granted to the extent that the article is irrelevant.

(4) Werner's motion to strike the documents containing his alleged admissions regarding probable cause and resisting arrest in prior court proceedings is irrelevant to the instant motion.

(5) Defendants' motion to strike Werner's supplemental declaration (Dkt. 31) is denied in that the Court considers the declaration to the extent it does not contradict any previous statements made by Werner.

1

**IV. ORDER**

2      Therefore, it is hereby **ORDERED** that Defendants' motion for summary

3   judgment (Dkt. 19) is **GRANTED in part** and **DENIED in part** as discussed herein, and

4   Werner's claims brought against the City are **DISMISSED with prejudice**.

5      Dated this 18th day of October, 2012.

6

7   _____

8   BENJAMIN H. SETTLE
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22